IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| Plaintiff, | ) |
| v. | ) No. 4:20-CR-747 HEA/NAB |
| MARCUS GARDNER | ) Evidentiary Hearing Requested |
| Defendant. | ) |

## MOTION TO SUPPRESS STATEMENTS

Defendant Marcus Gardner, by and through counsel, Assistant Federal Public Defender Kevin B. Gau, moves for an order suppressing any and all statements Mr. Gardner to law enforcement on August 27, 2019, as such statements were taken in violation of his right to be free from self-incrimination under the Fifth Amendment to the United States Constitution.  In support thereof, Mr. Gardner states:

### Facts

At seven in the morning on August 27, 2019, four or five Homeland Security agents maneuvered onto a narrow common entryway and knocked on Marcus Gardner's apartment door.  When Mr. Gardner answered the door, the agents asked to speak with him inside about an important matter.  Dressed in civilian clothing but armed, the agents, who were all white, announced their agency and told Mr. Gardner they wanted to speak to him about a credit card transaction.  Mr. Gardner,

who is black, was surprised by their presence and permitted them entry, believing he had no choice in part because he was black and they were white, they outnumbered him, and they insisted on entry.

Once inside his small apartment, the officers interviewed him in his living room, asking how long he had resided at the apartment, where he had lived before, and what his employment was.  After a few minutes of this conversation, Mr. Gardner was asked whether he would consent to a search of all of his computers.  Again, believing he had no choice, Mr. Gardner assented to the search.  Mr. Gardner was also asked if the agents could search his apartment.  As with the request to search his computers, the agents' presence, actions, and demeanor persuaded him he had no choice to decline, and so he signed the consent form permitting search.

Some of the agents began searching his apartment and his computers, while one or two spoke with Mr. Gardner.  Mr. Gardner related he had once had issues with the Army because of adult pornography he downloaded from the internet.  He advised the agents he had not been court-martialed but had received an "other than honorable" discharge as a result.  In their report of the August 27, 2019 search, the agents would indicate that Mr. Gardner admitting he had clicked on a link which caused several sites to pop up, "some of them having to do with Child Exploitation Material."  With this motion, Mr. Gardner affirmatively denies knowing whether the pop-up sites actually contained "child exploitation material" as defined by statute, though the sites may have had such content.  When the agents asked what

2

websites Mr. Gardner frequented which were problematic to the Army, he named one website. The agents would report the website Mr. Gardner identified "he believed contained suspect images and videos."

Thereafter an agent asked Mr. Gardner if he had ever viewed child exploitation material. Mr. Gardner replied, "I think I want to plead the Fifth." Despite Mr. Gardner's invocation of the Fifth Amendment, the agent did not take a break from questioning Mr. Gardner. The investigation report indicates the questioning agent asked Mr. Gardner "what that meant, and if he wanted to take a break." Mr. Gardner avers the agents then continued to question him about his family and interests before returning to questions about his internet browsing history and what pornographic websites he visited.

At no point during the encounter was Mr. Gardner advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Mr. Gardner avers that at the time the agents entered his apartment, for reasons related to the manner, timing, and actions at their entry, he believed they would not accept a refusal to talk. He further avers that he did not feel free to leave during the agents' questioning of him and the contemporaneous search of his apartment and computers.

Mr. Gardner now seeks to suppress all statements uttered to law enforcement on August 27, 2019 after he invoked the Fifth, as by the time of that invocation he was the subject to a custodial interrogation, and the agents did not scrupulously honor the invocation.

**Legal Standard**

3

Any time someone is subject to custodial interrogation by a state actor, the Fifth Amendment requires that they first be advised of their rights to be free from compulsory self-incrimination and to an attorney. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990). When *Miranda* warnings do not precede custodial interrogation, any subsequent statements are presumed to result from compulsion. *See Oregon v. Elstad,* 470 U.S. 298, 306-07 (1985). Such statements are subject to suppression and deemed inadmissible at trial. *Id*. at 309; *United States v. Ollie,* 442 F.3d 1135, 1140 (8th Cir. 2006).

To determine whether a subject is in custody, "the crux of [the] question is whether, viewing the circumstances as a whole, a reasonable person in [the Defendant's] position would have believed law enforcement officers had limited his or her freedom of movement to a degree associated with formal arrest." *United States v. Bordeaux*, 400 F.3d 548, 559-60 (8th Cir. 2005); citing *California v. Beheler*, 463 U.S. 1121 (1983). To make this determination, courts "must examine all of the circumstances surrounding the interrogation." *Stansbury v. California*, 511 U.S. 318, 322 (1994). Ultimately, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkmeyer v. McCarty*, 468 U.S. 420, 442 (1984).

In *Griffin*, the Eighth Circuit developed a six-factor test to determine whether a suspect is in "custody" for purposed of *Miranda*. 922 F.2d at 1349. Those factors are (1) whether police informed the subject he was free to leave and not

4

under arrest; (2) the subject's freedom of movement during questioning; (3) the subject's voluntary acquiescence to requests for questioning; (4) any strong arm tactics by police; (5) whether the atmosphere was police dominated; and (6) whether the subject was placed under arrest at the termination of questioning. *Id*. The Eighth Circuit has since held that while the six *Griffin* factors are "instructive," they are not dispositive. *Bordeaux*, 400 F.3d at 560. Instead, "'the court must consider whether the historical facts, as opposed to the one-step removed *Griffin* factors, establish custody.'" *Id.*, *quoting*, *United States v. Czichray*, 378 F.3d 822, 828 (8th Cir. 2004).

Even if an accused is informed of his Constitutional rights as required by *Miranda,* once he invokes his right to remain silent, all questioning must be cut off in order to scrupulously honor his rights. *Michigan v. Mosley,* 423 U.S. 96, 104 – 05 (1975). In other words, once an accused tells the police he does not want to talk to them, they must immediately cease questioning and terminate the interview with the possible exception of asking for routine personal identification information. *See e.g. United States v. Thompson,* 866 F.2d 268, 271 (8th Cir. 1989) (When the accused stated "I'll wait a little while before I'm interviewed" the agent ceased questioning except for a question related to where the defendant was from, which was permissible) (citation omitted).

An accused "invokes" his right to remain silent when he states the desire "sufficiently clearly that a reasonable police officer in the circumstances would

5

understand the statement to be a request" to exercise his right to remain silent and terminate the interrogation. *Davis v. United States,* 512 U.S. 4552, 459 (1994).

When deciding if the invocation of the right to remain silent is sufficiently clear, a court may **not** consider the accused's responses to continued questioning after he has invoked his right and on that basis conclude that his initial desire to not to speak must have been equivocal or was not serious. *See Smith v. Illinois,* 491 U.S. 91, 100 (1984) (Illinois Supreme Court improperly applied the *Miranda* analysis when it concluded that accused's responses to continued police questioning after his initial request for counsel meant his request must have been "ambiguous"); *Berghuis v. Thompkins,* 560 U.S. 370, 381-82 (2010) (Standards for determining when an accused has invoked the *Miranda* right to remain silent and the *Miranda* right to counsel are the same).

However, if an accused is not clear, saying things like "I don't *think* I wanna" or "Nah, I don't want to talk man. *I mean* I … don't…" immediately followed by answers to questions, he has not made a clear and unambiguous invocation of his right to remain silent. *United States v. Adams,* 820 F.3d 317, 320-21 (8th Cir. 2016).

### Analysis: Defendant Was In Custody, Not Given Miranda Warnings and Clearly Invoked the Fifth Amendment

The Court should suppress Mr. Gardner's statements to Homeland Security agents, as they subjected him to custodial interrogation without first informing him of his *Miranda* rights. As noted above, the custody question hinges on "how a reasonable man in the suspect's position would have understood his situation." *Berkmeyer*, 468 U.S. at 442. Given: (1) the early hour of the agents' arrival, (2)

6

questioning occurred simultaneously and in the midst of the search of his small apartment, (3) Mr. Gardner was outnumbered four or five armed officers to one, (4) Mr. Gardner was confined to his living room and the agent barred his exit, and (5) Mr. Gardner was not advised he could decline questioning and refuse them entry, among other factors, a reasonable person in his position would not have felt free to abandon the encounter. Another relevant fact is that Mr. Gardner's continued interrogation continued even after he invoked the Fifth Amendment, as an ignored Fifth invocation would communicate to a reasonable person he had no choice to end the interview or leave. As such, Mr. Gardner was in custody during the course of his interaction with the agents—a fact that necessitated *Miranda* warnings he never received.

Furthermore, when he indicated he wanted to plead the Fifth, Mr. Gardner clearly and concisely invoked his right to remain silent. At that point the agents should have scrupulously honored his request and ceased any further questioning. However, almost immediately after Mr. Gardner invoked the Fifth, the agent asked him what he meant, asked if he wanted to take a break, and then kept up the questioning. Such questioning ignored Mr. Garner's unequivocal invocation, violating his *Miranda* rights.

WHEREFORE, Mr. Gardner respectfully requests that this Court recommend to the District Court that any evidence or testimony regarding Mr. his statements be suppressed because he was subjected to a custodial interrogation without the benefit of the *Miranda* warning, and, further that his *Miranda* rights

7

were violated because he unequivocally invoked his right to remain silent and the agents did not immediately end the interrogation.  Mr. Gardner respectfully requests a hearing in order to establish that the government is not able to rebut this violation of his rights.

        Respectfully submitted,
        /s/ Kevin B. Gau
        KEVIN B. GAU, #51595MO
        Assistant Federal Public Defender
        1010 Market Street, Suite 200
        St. Louis, Missouri 63101
        Telephone: (314) 241-1255
        Fax: (314) 421-3177
        E-mail: Kevin_Gau@fd.org

        ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 27, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Jillian Anderson, Assistant United States Attorney.

        /s/ Kevin B. Gau
        KEVIN B. GAU
        Assistant Federal Public Defender