UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20 CR 747 HEA NAB |
| | ) | |
| MARCUS E. GARDNER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO
THE DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

Comes now the United States of America, by and through its Attorneys, Sayler A.

Fleming, United States Attorney for the Eastern District of Missouri, and Jillian S. Anderson,

Assistant United States Attorney for said District, and files this memorandum in opposition to

the Defendant's motion to suppress, and states as follows:

## I.    PROCEDURAL & FACTUAL BACKGROUND

On or about December 3, 2020, Defendant Gardner was indicted for one count of

receiving child pornography in violation of Title 18, United States Code, Section 2252A(a)(2).

The Defendant was arrested on December 8, 2020.  On September 27, 2021, the Defendant filed

a motion to suppress statements.

The investigation leading to the current charges against the Defendant was his third

investigation for child pornography offenses.  His first investigation was by the United States

Army in 2005.  Defendant Gardner was dishonorably discharged from the United States Army

on or about July 23, 2005, after downloading child pornography from the internet.  During the

1

Army's investigation, 1,695 files of suspected child pornography were located on the Defendant's personal computer. Of those files, 202 were determined by the FBI to be images of previously identified minor victims.  The Army issued a General Court Martial Order for the Defendant and he was arraigned at Wiesbaden, Germany where he was stationed at the time.  He was charged with violating Article 134 of the Uniform Code of Military Justice in that between on or about July 21, 2002 and July 17, 2003, the Defendant wrongfully and knowingly received and possessed visual depictions of minors engaging in sexually explicit activity.  No plea or conviction followed these charges.  Instead, the Army terminated the Court Martial proceedings on January 7, 2005, and the Defendant was "other than honorably" discharged from the U.S. Army.

The Defendant's second child pornography investigation was conducted by Homeland Security Investigation (HSI).  It resulted from a long-term investigation in which HSI identified over 1500 applications to pay-only child pornography websites, of those over 700 applicants were determined to be residents of the United States. The investigation determined that Defendant Gardner was one of the American applicants to a pay-only child pornography website. On June 7, 2007, HIS agents conducted a consensual interview with Defendant Gardner.  During that interview, Defendant Gardner admitted that he frequently purchased adult pornography, but would not give an answer as to whether he ever purchased child pornography.  The Defendant gave consent for the seizure and search of his computers.  Additionally, a search warrant to conduct a search of the Defendant's computers was obtained from the United States District Court for the Southern District of Illinois. A forensic examination of the Defendant's computers that were seized on June 7, 2007, revealed that the computers contained at least 100 deleted files

2

of child pornography.  Most of those files depicted child sexual abuse that was recorded during child sex tourism encounters in Asia.  The Defendant was interviewed again after HSI located the child pornography on his computers.  That interview occurred on April 8, 2008, and the Defendant stated that he did not know how child pornography got on his computers.  The Defendant further indicated that he was active in his church and served as a mentor to the teenagers in his church congregation.  The Defendant provided a written statement indicating that he did not knowingly download child pornography.  No charges stemmed from this investigation.

The most recent investigation, the one that led to the present Indictment of the Defendant, is his third investigation for child pornography offenses.  The charges against the Defendant stem from a HSI investigation that commenced in March of 2012, and involved a fee-based website referred to as "Website M."  "Website M" was hosted on a server located outside the United States, and it reportedly provided consumers with over 600,000 images and 400 hours of video that could be downloaded for a fee.  HSI determined that approximately one-half of the images and more than one-half of the videos on 'Website M" were child pornography and involved obviously prepubescent minors.  Passwords to decrypt the files downloaded from "Website M" were available for purchase at an average cost of $83.00 USD.  The HSI investigation determined that the website had collected at the equivalent of at least $19 million USD in profit from online users paying to download the content on 'Website M."  Consumers of the "Website M' content had to create an account with "Website M" in order to purchase content.  A HSI investigation into these accounts revealed that hundreds of consumers of "Website M" material were residence of the United States.  The Defendant was determined to be

one of the customers of "Website M."  HIS determined that the defendant accessed "Website M" 1,132 times between September 2, 2015 and December 3, 2018.  HSI further determined that the Defendant purchased child pornography on at least two occasions: on September 18, 2015, for $89.00 and on October 1, 2015, again for $89.00.

On August 27, 2019, at about 7 a.m., HSI Agents Jeffrey Wagner and Timothy Quinn knocked on the door of the Defendant's residence in St. Charles, Missouri.  The Defendant answered and agreed to allow Agent Wagner and Agent Quinn into his residence.  Inside the Defendant's home, the Defendant engaged in a consensual interview with Agents Wagner and Quinn.  The Defendant confirmed that he had resided in St. Charles, Missouri for about one year and that he previously resided in Granite City, Illinois.  After being apprised of the nature of the investigation, the Defendant provided consent in writing for HSI to search his home for electronics and to seize and search his electronics.  The Defendant indicated that he had two laptops and maybe a few thumb drives.  He said he had no external hard drives.  The Defendant explained that his issues with the Army began because of his issues with adult pornography.  The Defendant further explained that he clicked on a link and several sites popped up that had to do with child exploitation material.  The Defendant said that he was not court-martialed and that he received an "other than honorable" discharge.  Regarding his more recent conduct, the Defendant indicated that he visited the website "Motherless.com," which he believed contained suspect images and videos, but that he did not click on them.  The Defendant then stated, "I think I want to plead the fifth."  SA Quinn responded by asking Defendant Gardner what that mean and if he wanted to take a break.  Gardner did not respond to the questions and instead kept speaking abut

4

his son who visits his residence on occasion and about his involvement in his church you choir. Gardner explained that he is never alone with children because he "doesn't trust the world."

HSI Agents who were searching the Defendant's residence, alerted the Agents with the Defendant that they had located a backpack in the Defendant's closet that contained (despite the Defendant's earlier statement that he had no external hard drives) seven external hard drives, two thumb drives and a document containing a username and password for an internet website with the address "stickamcapturesandpornnnn.blogspot.com."  HSI Agents also found a laptop computer (a third one, after the Defendant had indicated he had two) in a bag in the guest bedroom.  When confronted with the presence of electronics beyond those disclosed by the Defendant, the Defendant indicated that HSI would find child exploitation material on one of the hard drives.  The Defendant further admitted that the last time he accessed child exploitation material was last week. The Defendant explained that he would download child pornography and then delete it and that he had downloaded a program off the internet to recover deleted child pornography.  The Defendant further explained that years ago he located a website that allowed him to download packets of child pornography, then purchase an encryption key for $90 - $100 to be able to access the material.  The Defendant explained that he used his credit card to make these child pornography purchases and that he would receive emails when there was new material available to download. The Defendant said that the last time he purchased child pornography from this website was in November of 2018, and that the site is no longer accessible.  The Defendant stated that he mostly downloaded child pornography out of "curiosity" and that it depicted children under the age of 18 showing their bodies or being sexually used by adults or other children.  The defendant explained that he purposefully did not

5

have kids around him for fear of the exact situation he was in now (HSI Agents coming to his apartment). The Defendant claimed that he bever traded child pornography. He explained that he spent $100 per month on child pornography at times. The Defendant provided the HSI with the name of another website that he said contained child pornography. The interview of the Defendant by HSI Agents Wagner and Quinn ended at 9:15 a.m. The Defendant was not in custody until his arrest over one year later on December 8, 2020.

A forensic examination of the Defendant's electronics that were seized on August 27, 2019, was conducted. About 333 images and 67 videos of child pornography were discovered on the Defendant's Hewlett-Packard laptop computer under the user account "Marcus" with the registered full name of "Marcus Gardner." The name assigned to that Hewlett-Packard laptop was "MEGPRODUCTIONS" and the laptop was registered to medproducts@outlook.com. The child pornography on the Hewlett-Packard laptop was all located in a file folder that began with "/Users/Marcus/Downloads/New folder… ." Further child pornography, specifically 64 thumbnail images, were located on the Defendant's Sony Vaio laptop computer. The computer name assigned to the Defendant's Sony Vaio computer was "MEUGENEG." On the Defendant's ASUS laptop, 249 images and 69 videos of child pornography were located. The registered owner of the ASUS laptop was megproducts@outlook.com, and the user account was "Marcus" with a full registered name of "Marcus Gardner." The file path where the child pornography was located began with "/Users/megpr/Documents… ." The Defendant's Western Digital External Hard Drive was found to contain about 7,807 image files and 234 video files of child pornography. Another 578 images of child pornography were located on a second Western Digital External Hard Drive belonging to the Defendant. On a Toshiba External Hard Drive

belonging to the Defendant, law enforcement located about 378 images and 32 videos of child pornography. On the Defendant's Seagate External Hard Drive, law enforcement located about 1,438 images and 32 videos of child pornography. On a second Seagate External Hard Drive belonging to the Defendant, law enforcement located three images and five videos of child pornography. On a third Seagate External Hard Drive, the Defendant possessed three images of child pornography. On one SanDisk thumb drive, the Defendant possessed 119 images and 31 videos of child pornography, and on a second SanDisk thumb drive he possessed 70 images and 43 videos of child pornography. In total, the Defendant possessed about 11,042 images and 513 videos of child pornography on his electronics.

## II.      ANALYSIS AND CONCLUSIONS OF LAW

The Defendant was not in custody at the time he was interviewed by HSI Agents Wagner and Quinn in his home on August 27, 2019. Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966); *Berkemer v. McCarty,* 468 U.S. 420, 429, 104 S.Ct. 3138, 3144–45, 82 L.Ed.2d 317 (1984). To determine whether a suspect is "in custody" the Court should examine the extent of the physical or psychological restraints placed on the suspect during interrogation in light of whether a "reasonable person in the suspect's position would have understood his situation" to be one of custody. *Berkemer,* 468 U.S. at 442, 104 S.Ct. at 3151; *United States v. Carter,* 884 F.2d 368, 370 (8th Cir.1989); *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990). The determination of custody arises from an examination of the totality of the circumstances. *Carter,* 884 F.2d at 370, *citing, United States v. Lanier,* 838 F.2d 281, 285 (8th

Cir.1988).  It is insufficient to render an interrogation custodial that the purpose of the interrogation is to obtain potentially inculpatory information from a suspect that has become the focus of the investigation.  *Beckwith v. United States,* 425 U.S. 341, 345, 96 S.Ct. 1612, 1615, 48 L.Ed.2d 1 (1976); *United States v. Jones,* 630 F.2d 613, 615 (8th Cir.1980); *United States v. Griffin*, 922 F.2d 1343, 1348 (8th Cir. 1990).  And the fact that the purpose of the questioning is to further focus the investigation on the defendant does not weigh heavily in the analysis of whether a defendant was in custody.  *Carter,* 884 F.2d at 370, *quoting, United States v. Jimenez,* 602 F.2d 139, 145 (7th Cir.1979).

The Eighth Circuit has identified indicia of custody which tend to either mitigate or aggravate an atmosphere of custodial interrogation. These indicia of custody include (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.  *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)

In the instant case, Defendant Gardner agreed to allow HSI Agents into his home where he engaged in a consensual interview.  The Eighth Circuit Court of Appeals has noted that when a person is questioned "on his own turf" the Court has repeatedly held that the surroundings are "not indicative of the type of inherently coercive setting that normally accompanies a custodial

8

interrogation." *United States v. Helmel*, 769 F.2d 1306, 1320 (8th Cir.1985) *quoting United States v. Rorex*, 737 F.2d 753, 756 (8th Cir.1984); *see also United States v. Wolk*, 337 F.3d 997, 1007 (8th Cir.2003); *United States v. Sutera*, 933 F.2d 641, 647 (8th Cir.1991); *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004). Because the Defendant was questioned by agreement and consensually in his own home with freedom of movement, and because the HIS Agents did not create a dominating atmosphere and utilized no strong arm or deceptive tactics, it is clear that Defendant Gardner was not in custody during the interview on August 27, 2019. Prior to, during and after that interview, the Defendant remained free from arrest and custody for many months.

The Defendant in this case never requested counsel and did not make a clear invocation of his right to remain silent. However, even assuming, *arguendo*, that he did, the fact remains that the Defendant was not in custody. Even if he attempted to invoke his rights, no reasonable person in his position have believed he was under arrest or that his freedom had been restricted to the degree associated with an actual arrest. *See McNeil v. Wisconsin* 501 U.S. 171, 182, (1991) (noting in fn.3 that "Most rights must be asserted when the government seeks to take the action they protect against."], *see also*, *Davis v. Allsbrooks*, 778 F.2d 168, 170–71 (4th Cir. 1985) ("It is also undisputed that he indicated that he no longer wanted to talk, and that police continued to question him despite his request. *Miranda* clearly prohibits such police conduct where it applies, but *Miranda* applies only when an individual is subject to custodial interrogation).

Even if he were to be found to be I custody, the Defendant did not make an invocation of his right to remain silent. To invoke one's right to remain silent, a suspect must unequivocally

9

express his desire to remain silent. *United States v. Al–Muqsit*, 191 F.3d 928, 936 (8th Cir.1999). An assertion of one's *Miranda* rights must be neither ambiguous nor equivocal. *See Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). To determine whether a defendant has unequivocally invoked the right to remain silent, the defendant's statements should be considered as a whole. *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir.1995); *Simmons v. Bowersox*, 235 F.3d 1124, 1131 (8th Cir. 2001); *United States v. Ferrer–Montoya*, 483 F.3d 565, 569 (8th Cir.2007). To adequately invoke the right to remain silent and effectively cut off questioning, a suspect must indicate "a clear, consistent expression of a desire to remain silent." *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir.1995) (quoting *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir.1989)).

In the present case, the Defendant, after being informed of the nature of the investigation, stated that "I think I want to plead the fifth." When the HSI Agents attempted to get clarification, the Defendant dropped the issue and began discussing the investigation. This is far from an unequivocal and clear assertion of his rights. *See, e.g., United States v. Hicks*, 967 F. Supp. 242, 250 (E.D. Mich. 1997) (the Court found that a defendant's statement that he did not feel that he should say anything because he had been indicted was not a clear and unequivocal assertion of the right to remain silent and did not require the police to cease questioning); *United States v. Williams*, 690 F. Supp. 2d 829, 836–37 (D. Minn. 2010) ( finding no sufficiently clear invocation of rights when a suspect stated partway through the interrogation "I'm done answering questions" but then quickly continued to explain her situation); *United States v. Adams*, 820 F.3d 317, 323 (8th Cir. 2016) (finding that a suspect's statement "Nah, I don't want to talk, man," followed by an immediate continuation of dialogue about the investigation was ambiguous);

*United States v. Havlik*, 710 F.3d 818, 822 (8th Cir.2013) (holding that the statement "I guess you better get me a lawyer then" was not a clear and unequivocal invocation of the right to an attorney because the phrase "I guess" was equivocal). Because the Defendant used equivocating and unclear terms when he stated "I think I want to plead the fifth," and because he immediately launched into further communications about the investigation, there was no clear and unambiguous assertion of rights by the Defendant.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Defendant's Motion to Suppress be denied.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

*/s/Jillian S. Anderson*
JILLIAN S. ANDERSON, #53918MO
Assistant United States Attorney
111 South 10th Street, Rm. 20.333
St. Louis, Missouri 63102
314-539-2200
jillian.anderson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel for the Defendant.

*/s/ Jillian S. Anderson*
Jillian S. Anderson, Mo. Bar 53918

11